**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **GLORIA REEVES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )     **Case No. 1:21-cv-10-CWB** |
| | ) |
| **KILOLO KIJAKAZI,[1]** | ) |
| **Acting Commissioner of** | ) |
| **Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

### I.     Introduction and Administrative Proceedings

Gloria Reeves ("Plaintiff") filed an application for Disability Insurance Benefits under Title II of the Social Security Act and an application for Supplemental Security Income under Title XVI of the Social Security Act on August 31, 2017—alleging disability onset as of June 15, 2011 due to learning disabilities, hypertension, and problem with legs. (Tr. 10, 109-12, 119-20).[2]  Plaintiff's claims were denied at the initial level on October 25, 2017 (Tr. 10, 109-10, 132, 137), and Plaintiff requested *de novo* review by an administrative law judge ("ALJ") (Tr. 10, 145-47).  The ALJ subsequently heard the case on May 29, 2019 (Tr. 64-106), at which time testimony was given by Plaintiff (Tr. 66-100) and by a vocational expert (Tr. 100-05). After receipt and consideration of additional medical records, the ALJ conducted a supplemental hearing on February 7, 2020, at which time further testimony was provided by Plaintiff and the

---

[1] Kilolo Kijakazi became Acting Commissioner for the Social Security Administration on July 9, 2021 and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] References to pages in the transcript are denoted by the abbreviation "Tr."

vocational expert. (Tr. 30-61). The ALJ took the matter under advisement and issued a written

decision on April 14, 2020 that found Plaintiff not disabled. (Tr. 10-23).

The ALJ's written decision contained the following enumerated findings:

1.  The claimant meets the insured status requirements of the Social Security Act through June 30, 2015.

2.  The claimant has not engaged in substantial gainful activity since June 15, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: lumbago, hypertension, borderline intellectual functioning, and learning disorder in reading (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926), including 12.11 and 1.04.

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that she can never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; and occasionally stoop, kneel, crouch, and crawl. She is limited to the simple routine tasks of unskilled work that require her to only apply common sense understanding to carry out simple one or two-step instructions and deal with standardized situations with occasional or no variables in or from situations on the job (which would be classified as a reason one level job that should match her third grade reading level). She would require gradually introduced changes.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on January 24, 1983, and was 28 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 15, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 12, 13, 15, 21, 22, 23).  On December 2, 2020, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-5), thereby rendering the ALJ's decision the final decision of the Commissioner.  *See, e.g., Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

On appeal, Plaintiff asks the court to reverse the final decision and remand the case for a new hearing and further consideration.  (Doc. 16 at p. 16).  The court now finds that the case is ripe for review pursuant to 42 U.S.C. § 405(g); specifically, the court construes Plaintiff's supporting brief (Doc. 16) as a motion for summary judgment and the Commissioner's opposition brief (Doc. 18) as a competing motion for summary judgment.  Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the court concludes that Plaintiff's motion for summary judgment is due to be denied, that the Commissioner's motion for summary judgment is due to be granted, and that the final decision is due to be affirmed.[3]

## II.    Standard of Review and Regulatory Framework

The court's review of the Commissioner's decision is a limited one.  Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla," but

_____

[3] As contemplated by 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the exercise of full jurisdiction by a United States Magistrate Judge. (Docs. 8 & 9).

less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.") (citations omitted).  The court thus may reverse the ALJ's decision only if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied.  *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  Reversal is not warranted simply because the court itself would have reached a result contrary to that of the factfinder.  *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  Despite the deferential nature of its review, however, the court must look beyond those parts of the record that support the decision, must view the record in its entirety, and must take account of evidence that detracts from the evidence relied on in the decision.  *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[4]  To make such a determination, the ALJ employs a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520 & 416.920.

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

---

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[5]

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four. *Id*. At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*.

---

[5] *McDaniel* is an Supplemental Security Income case. Nonetheless, the same sequence applies to claims for Disability Insurance Benefits brought under Title II. Cases arising under Title XVI therefore are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

at 1239.   To do so, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE").   *Id*. at 1239-40.   The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.   Each factor can independently limit the number of jobs realistically available to an individual, and combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."   *Id*. at 1240.

## III.   Issues on Appeal

Plaintiff raises four issues on appeal: (1) whether the ALJ properly evaluated the prior administrative medical finding of non-examining state psychological consultant Donald E. Hinton, Ph.D., when determining Plaintiff's RFC; (2) whether the ALJ failed to comply with 20 C.F.R. § 404.1520c; (3) whether the ALJ committed error by failing to evaluate Plaintiff's ganglion cyst; and (4) whether the ALJ relied on Plaintiff's lack of treatment when evaluating her subjective complaints.   (Doc. 16 at p. 1).

## IV.   Discussion

### A.   Administrative Medical Finding of Dr. Hinton

Plaintiff contends that, despite finding Dr. Hinton's opinion regarding her concentration to be persuasive, the ALJ erred by not including Dr. Hinton's assessment that she could only maintain attention for two-hour periods into the RFC assessment.   (Doc. 16 at  pp. 7-8).   In response, the Commissioner argues that the ALJ properly evaluated Dr. Hinton's prior administrative medical finding and committed no reversible error—as there was no unresolved conflict between the ALJ's RFC assessment and Dr. Hinton's medical finding or any other error in the evaluation of Dr. Hinton's medical finding.   (Doc. 18 at p. 8).

Because Plaintiff's claim was filed on August 31, 2017 (Tr. 10), review must be guided by the revised regulations applicable to claims filed on or after March 27, 2017.  *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c.  The revised regulations no longer use the phrase "treating source" but instead use "your medical source(s)."  *See* 20 C.F.R. §§ 404.1520c, 416.920c; *Nix v. Saul*, No. 4:20-CV-00790, 2021 WL 3089309 at *5 (N.D. Ala. July 22, 2021).  For claims governed by the revised regulations, the agency thus "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 898 (11th Cir. 2022).  "Further, the regulations governing claims filed on or after March 27, 2017, no longer mandate particularized procedures that the adjudicator must follow in considering opinions from treating sources (*e.g.*, requirement that adjudicators must 'give good reasons' for the weight given a treating source opinion)."  *Nix*, 2021 WL 3089309 at *6 (citing 20 C.F.R. § 404.1520c(b)).  Instead, the "new regulations require an ALJ to apply the same factors when considering the opinions from *all* medical sources."  *Simon v. Kijakazi*, No. 8:20-CV-1650, 2021 WL 4237618 at *3 (M.D. Fla. Sept. 17, 2021) (emphasis in original) (citing 20 C.F.R. § 404.1520c(a)).

Stated differently, in evaluating the persuasiveness of the medical opinion(s) or prior administrative medical finding(s), "[the agency] will consider those medical opinions or prior administrative medical findings from that medical source together" using the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(a), (c), 416.920c(a), (c).  "The most important factors … [used

to] evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability ... and consistency." 20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2); *Simon*, 2021 WL 4237618 at *3. Therefore, "the ALJ must explain how he or she considered the supportability and consistency factors." *Wynn v. Kijakazi*, No. 8:20-CV-2862, 2022 WL 1115296 at *4 (M.D. Fla. Apr. 14, 2022). "The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors." *Nix*, 2021 WL 3089309 at *6 (citing 20 C.F.R. § 404.1520c(a)-(c)). "However, the ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record." *Thaxton v. Kijakazi*, No. 1:20-CV-00616, 2022 WL 983156 at *8 (M.D. Ala. Mar. 30, 2022); *Williamson v. Kijakazi*, No. 2:20-CV-772, 2022 WL 2257050 at *3 (M.D. Ala. June 23, 2022). Moreover, "'[t]he ALJ may but is not required to explain how he considered the other remaining factors.'" *Id*. at *4 (citation omitted); 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. §§ 404.1520c(d), 416.920c(d). Further, "[t]he ALJ is under no obligation to 'bridge' every piece of evidence he finds inconsistent with a specific opinion. ... Nothing requires the ALJ to discuss every piece of evidence so long as the decision does not broadly reject evidence in a way that prevents meaningful judicial review." *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366, 2021 WL 4261218 at *9 (M.D. Fla. Sept. 20, 2021) (citations omitted).

An RFC determination is an assessment of what a claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Phillips*, 357 F.3d at 1238-39; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997); 20 C.F.R. §§ 404.1545(a), 416.945(a) ("Your residual functional capacity is the most you can still do despite your

limitations.").  "[T]he task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor." *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016); *Hollingsworth v. Comm'r of Soc. Sec.*, 846 F. App'x 749, 753 (11th Cir. 2021) ("A claimant's RFC is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter is considered, it is not dispositive."); *Bouie v. Astrue*, 226 F. App'x 892, 894 (11th Cir. 2007) ("An ALJ may reject the opinion of any physician when the record supports a contrary conclusion.  The resolution of conflicting evidence is the function of the ALJ, not the Court.") (citation omitted); *Frank v. Comm'r of Soc. Sec.*, No. 2:20-CV-962, 2022 WL 598036 at *8 (M.D. Fla. Feb. 10, 2022), *report and recommendation adopted*, No. 2:20-CV-962, 2022 WL 596833 (M.D. Fla. Feb. 25, 2022) ("[T]here is no requirement that an ALJ base the RFC finding on a medical source's opinion."); *Tolbert v. Kijakazi*, No. 3:21-CV-33, 2022 WL 4591646 at *2 (M.D. Ala. Sept. 29, 2022) ("An ALJ may 'distill a claimant's RFC from an amalgamation of the record as a whole, without requiring a specific medical opinion to articulate a specific functional limitation.'") (citation omitted).  "It is 'solely the province of the [Commissioner]' to resolve conflicts in the evidence and assess the credibility of witnesses." *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015) (citation omitted).

"To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (citations omitted).  Although an RFC determination must be supported by substantial evidence, the ALJ "is not required to specifically address every aspect of an opinion or every piece of evidence in the record" in order for the determination to be affirmed. *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019); *Dyer v. Barnhart*, 395 F.3d 1206, 1211

(11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is 'not enough to enable [the district court ... ] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'") (citation omitted).   Moreover, "to find that the ALJ's RFC assessment is supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician."   *Smoke v. Kijakazi*, No. CV 21-0206, 2022 WL 721532 at *4 (S.D. Ala. Mar. 9, 2022).

Dr. Hinton opined that Plaintiff had moderate limitation on the ability to concentrate, persist, or maintain pace and mild limitation on the ability to understand, remember, or apply information, mild limitation on the ability to interact with others, and mild limitation on the ability to adapt or manage oneself.  (Tr. 16, 124).  Dr. Hinton also opined that Plaintiff could complete simple instructions and maintain attention for two-hour intervals.  (Tr. 126-27).  The ALJ summarized Dr. Hinton's opinion but did not directly mention Dr. Hinton's opinion regarding Plaintiff's being able to maintain attention for two-hour intervals.  (Tr. 16).  The ALJ found that Dr. Hinton's findings were partially persuasive and "agree[d] with all of [Dr. Hinton's] findings except regarding the area of understanding, remembering, or applying information."  (Tr. 16).  The ALJ further found that the objective record supported the conclusion that Plaintiff had moderate limitations in understanding, remembering, and applying information.  (Tr. 16).  In determining Plaintiff's RFC, the ALJ found that Plaintiff was limited to "the simple routine tasks of unskilled work that require[d] her to only apply common sense understanding to carry out simple one or two-step instructions and deal with standardized situations with occasional or no variables in or from situations on the job (which would be classified as a reason one level job that should match her third grade reading level)" and that she would "require gradually introduced changes."

(Tr. 15, 20).  Plaintiff contends that the ALJ erred by not including Dr. Hinton's assessment that she could maintain attention only for two-hour intervals.  (Doc. 16 at pp. 8-9).

As stated above, the ALJ—not a doctor—has the duty to determine a claimant's RFC. *Moore*, 649 F. App'x at 945.  Thus, an ALJ "is not required to base[] [the] RFC on a doctor's opinion."  *McCarver v. Comm'r of Soc. Sec.*, No. 4:20-CV-1053, 2022 WL 860190 at *6 (N.D. Ala. Mar. 22, 2022) (citing *Castle v. Colvin*, 557 F. App'x 849, 853-54 (11th Cir. 2014)); *Vilches v. Kijakazi*, No. 3:21-CV-15, 2022 WL 11455775,at *2 (M.D. Ala. Oct. 19, 2022) ("Indeed, 'an ALJ's RFC assessment need not match or mirror the findings or opinions of any particular medical source ... because the reasonability of assessing the RFC rests with the ALJ.'") (citation and internal quotation marks omitted).  While state agency medical or psychological consultants are considered experts in Social Security disability evaluation, "[a]dministrative law judges are not required to adopt any prior administrative findings, but they must consider this evidence according to §§ 404.1520b, 404.1520c, and 404.1527, as appropriate."  20 C.F.R. § 404.1513a(b)(1); 20 C.F.R. 416.913a(b)(1).  The regulations provide that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."   20 C.F.R. §§ 404.1520c(a), 416.920c(a).  "Thus, an ALJ need not adopt every part of an opinion that the ALJ finds persuasive."  *Rivera Misla v. Comm'r of Soc. Sec.*, No. 6:20-CV-1076, 2021 WL 2417084 at *2 (M.D. Fla. June 14, 2021); *Vilches*, 2022 WL 11455775, at *3 ("Moreover, the ALJ provides an RFC by considering the entirety of the evidence rather than a single opinion—not simply regurgitating in the RFC from even persuasive medical opinions, and some slight deviation may be appropriate.").  *See also Szoke v. Kijakazi*, No. 8:21-CV-502, 2022 WL 17249443 at *9, n.12 (M.D. Fla. Nov. 28, 2022) (collecting cases).  Nor is an

ALJ "compelled to 'specifically refer to every piece of evidence in his decision.'" *Szoke*, No. 8:21-CV-502, 2022 WL 17249443 at *9 (citation omitted).

Although the ALJ found Dr. Hinton's opinion to be partially persuasive, the ALJ was under no obligation to adopt every part of the opinion. "The regulations do not require ALJs to adopt into an RFC every part of an opinion that they otherwise find persuasive." *Guth v. Comm'r of Soc. Sec.*, No. 2:21-CV-106, 2022 WL 8211404 at *9 (M.D. Fla. Aug. 5, 2022), *report and recommendation adopted*, No. 2:21-CV-106, 2022 WL 4115784 (M.D. Fla. Sept. 9, 2022) (citing 20 C.F.R. §§ 404.1520c(a), 416.920c(a)). *See Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-CV-1108, 2019 WL 4686800 at *8 (M.D. Fla. Sept. 26, 2019) ("[T]he ALJ's RFC assessment did not need to match or mirror the findings or opinions of any particular medical source ... because the responsibility of assessing the RFC rests with the ALJ."); *Tolbert*, 2022 WL 4591646 at *2 ("There is no requirement that an ALJ include every limitation from a medical opinion verbatim in an RFC determination or specifically address every aspect of an opinion or every piece of evidence in the record."); *Powell v. Kijakazi*, No. CV 321-066, 2022 WL 4000719 at *5 (S.D. Ga. Aug. 9, 2022), *report and recommendation adopted*, No. CV 321-066, 2022 WL 3970838 (S.D. Ga. Aug. 31, 2022) ("[F]inding a medical opinion persuasive does not require the ALJ to fully incorporate that opinion into the RFC."); *Williamson*, 2022 WL 2257050 at *3.

Further, in assessing a plaintiff's RFC, an ALJ considers the most that the plaintiff could do despite her impairments in an 8-hour workday and a 5-day workweek with normal breaks, such as lunch, morning, and afternoon snacks. The Social Security Administration's Programs Operations Manual System ("POMS") provides that "mental abilities needed for any job" include the ability to understand, carry out, and remember simple instructions, which include, among other things, "[t]he ability to maintain concentration and attention for extended periods (the

approximately 2-hour segments between arrival and first break, lunch, second break, and departure)." SSA POMS DI § 25020.010(B)(2)(a) (last updated Aug. 23, 2018); *see also* SSA POMS DI § 24510.005(C)(2)(b), General Guidelines for RFC Assessment, (last updated Aug. 23, 2018) ("Consider an 8-hour workday and a 5 day work week (with normal breaks, e.g., lunch, morning and afternoon breaks) in evaluating the ability to sustain work-related functions."). Here, the ALJ found that Plaintiff had moderate limitation in the ability to concentrate, persist, or maintain pace and limited her "to the simple routine tasks of unskilled work that require her to only apply common sense understanding to carry out simple one or two-step instructions." (Tr. 14, 15). "[T]he Eleventh Circuit has held that a limitation to 'simple work' or something similar sufficiently accounts for moderate difficulties in concentration, persistence, and pace if the medical evidence shows the claimant can perform simple, routine work." *Jackson v. Kijakazi*, No. 1:20-CV-00039, 2021 WL 4472597 at *3 (M.D. Ala. Sept. 29, 2021) (citing *Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 846 (11th Cir. 2017) (holding that because the objective evidence showed that plaintiff could perform simple, routine tasks, the ALJ's limitation of unskilled work in the RFC sufficiently accounted for her moderate difficulties in concentration, persistence, and pace) and *Smith v. Comm'r of Soc. Sec.*, 486 Fed. Appx. 874, 875 (11th Cir. 2012) (approving RFC that limited claimant to simple, routine, repetitive tasks as adequately accounting for moderate limitations in concentration, persistence, and pace when medical evidence supported that claimant could perform simple, routine, repetitive work)); *James C. v. Comm'r, Soc. Sec. Admin.*, No. 1:17-CV-00884, 2018 WL 6137611 at *5 (N.D. Ga. Sept. 29, 2018) (noting the "well-established [Eleventh Circuit] precedent that claimants with moderate limitations in concentration, persistence, and pace can do unskilled work and handle simple instructions when medical evidence supports those limitations") (collecting cases). Plaintiff does not challenge the

ALJ's limiting her to the simple routine tasks of unskilled work.  Given that the ALJ determined that Plaintiff had moderate limitation in the ability to concentrate, persist, or maintain pace, limiting Plaintiff to simple work or something similar would not require more than being able to "attend and concentrate for two-hour periods." *See Jackson*, 2021 WL 4472597 at *5 ("Dr. Veits opined that Plaintiff is 'moderately limited' in attention and concentration for 'extended periods' but can 'attend and concentrate for two-hour periods.'  'Simple work' would not require more than that.") (citing SSA POMS DI 24510.005).

Plaintiff cites *Walker v. Saul*, 533 F. Supp. 3d 1055 (M.D. Ala. 2020) to argue that the ALJ needed to specifically include a two-hour concentration limitation into Plaintiff's RFC.  (Doc. 16 at pp. 8-9).  In *Walker*, the ALJ found "persuasive" the opinion of a doctor who opined that the plaintiff was moderately limited in the ability to maintain concentration for extended periods and that the plaintiff could "attend and concentrate for two-hour periods."  *Id*. at 1060.  The ALJ included into the plaintiff's RFC that she could "understand, remember, apply and carry out simple, repetitive instructions and can persist at that level of complexity for eight hours a day, five days a week consistently."  *Id*. at 1059.  The *Walker* court found the ALJ's conclusion to be "curious" given that despite the ALJ's finding the doctor's opinion to be persuasive the ALJ did not include the two-hour concentration limitation.  *Id*. at 1060.  In finding reversible error, the court stated that the ALJ's opinion did not indicate why the ALJ concluded that the plaintiff could persist for eight hours a day instead of for two-hour periods, nor did the opinion point to any specific evidence that supported such a conclusion or contradicted the doctor's opinion.  *Id*.

However, the facts in *Walker* are distinguishable from those in this action.  Unlike in *Walker*, where the ALJ found that the plaintiff could persist at simple work "for eight hours a day, five days a week consistently," the ALJ made no such specific determination here that Plaintiff

could persist for eight-hours a day.  To the contrary, the ALJ's limiting Plaintiff to simple work or something similar was consistent with Dr. Hinton's opinion that Plaintiff could maintain attention for two-hour intervals.  *Jackson*, 2021 WL 4472597 at *5; SSA POMS DI § 24510.005(C)(2)(b); SSA POMS DI § 25020.010(B)(2)(a).  Accordingly, the court concludes that the ALJ did not commit reversible error on this issue.

### B.    Compliance with 20 C.F.R. § 404.1520c

Plaintiff argues that the ALJ failed to articulate how persuasive he found the opinion of Sandra E. Cline, Ph.D., and how the opinion was used in support of the RFC.  (Doc. 16 at pp. 9-10).  The Commissioner contends that the ALJ's lack of a statement as to the persuasiveness of Dr. Cline's medical opinion about Plaintiff's difficulty with reading was at most harmless error.  (Doc. 18 at p. 8).

As stated previously, in evaluating the "medical opinion(s) and prior administrative medical finding(s) in [a claimant's] case," the agency will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. §§ 404.1520c(a), (c), 416.920c(a), (c).  "The most important factors … [used to] evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability ... and consistency."  20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2).  The agency "will articulate in [its] determination or decision how persuasive [it] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record."  20 C.F.R. §§ 404.1520c(b), 416.920c(b).  The agency's "articulation requirements are as follows: (1) Source-level articulation. … (2) Most important factors. … (3) Equally persuasive

medical opinions or prior administrative medical findings about the same issue. …."  20 C.F.R.

§§ 404.1520c(b)(1)-(3), 416.920c(b)(1)-(3).

The ALJ summarized Dr. Cline's opinion as follows:

> In January 2011, the claimant underwent testing with Sandra E. Cline, Ph.D., upon referral by vocational rehabilitation, to determine current functioning. The claimant was administered the Wechsler Adult Intelligence Scale-Third Edition, on which she obtained a verbal IQ of 69, performance IQ of 76, full-scale IQ of 70, verbal comprehension IQ of 68, and a perceptual organization score of 78. On the WRAT 3, the claimant obtained a grade equivalent reading level of 3rd grade and a grade equivalent arithmetic level of 4th grade. Test results were considered valid, and Dr. Cline assessed the claimant with borderline intellectual functioning and reading disorder. Dr. Cline opined that the claimant would have difficulty in a position that required her to read directions and instructions. She further opined that the claimant could manage small amounts of money and that she should be encouraged to read something daily for pleasure and information (Exhibit 11F).

(Tr. 19, 552-54).  The ALJ also acknowledged Dr. Cline's notation that Plaintiff had obtained an

occupational diploma.  (Tr. 20, 554).

Although the ALJ failed to assign a level of persuasiveness to Dr. Cline's opinion, that

failure alone does not necessarily result in reversible error if the failure does not affect the ALJ's

ultimate findings.  *See Shelton v. Kijakazi*, No. CV 121-154, 2022 WL 3334454 at *5 (S.D. Ga.

July 22, 2022), *report and recommendation adopted*, No. CV 121-154, 2022 WL 3330148

(S.D. Ga. Aug. 11, 2022) ("When an ALJ's failure to discuss persuasiveness of a medical opinion

'[does] not affect its ultimate findings, the error is harmless, and the ALJ's decision will stand.'")

(citing *Tillman v. Comm'r, Soc. Sec. Admin.*, 559 F. App'x 975, 975 (11th Cir. 2014) and *Diorio

v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)); *Jesus v. Comm'r of Soc. Sec.*, No. 6:20-CV-1930,

2022 WL 2293887 at *3 (M.D. Fla. Feb. 9, 2022) ("The Commissioner does not dispute that the

ALJ failed to discuss or assign a level of persuasiveness to Dr. Geddie's opinion.  However, as the

Commissioner correctly notes, this failure does not in itself result in reversible error."); *Perez v.

Kijakazi,* No. 1:21-CV-666, 2023 WL 2601905 at *2 (M.D. Ala. Mar. 22, 2023) ("[A]n error that

does not affect ALJ's ultimate decision is harmless and does not constitute a ground for reversal."). The Eleventh Circuit has stated that "when an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand." *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (citing *Diorio*, 721 F.2d at 728).

Here, the ALJ's failure to assign a level of persuasiveness to Dr. Cline's opinion was harmless error because the ALJ's decision when read as a whole demonstrates that the RFC is largely consistent with Dr. Cline's opinion. The ALJ specifically found that Plaintiff's borderline intellectual functioning and learning disorder in reading as diagnosed by Dr. Cline was a severe impairment. (Tr. 13, 554). The ALJ considered Dr. Cline's evaluation and statements about Plaintiff's reading difficulties. (Tr. 19-20). Largely consistent with Dr. Cline's evaluation and opinion, the ALJ limited Plaintiff "to the simple routine tasks of unskilled work that require her to only apply common sense understanding to carry out simple one or two-step instructions and deal with standardized situations with occasional or no variables in or from situations on the job (which would be classified as a reason one level job that should match her third grade reading level)" with "gradually introduced changes." (Tr. 15, 20).

Further, Dr. Cline's opinion was consistent with the other evidence in the record. The ALJ considered the work evaluations from Wiregrass Rehabilitation Center dated 2011, which indicated that she met with a counselor, entered community employment, and was referred by her vocational rehabilitation counselor for certified nursing assistant training. (Tr. 19, 313-14, 318-19). The ALJ noted that documentation from February 2011 disclosed that Plaintiff and her counselor determined that Plaintiff required and could benefit from vocational rehabilitation services consisting of job placement, as well as vocational counseling and guidance. (Tr. 19, 426,

549, 574).  The ALJ also considered the December 2012 opinion of Randall Jordan, Psy.D., who performed a mental status examination on Plaintiff.  (Tr. 19, 308-10).  Dr. Jordan's mental status examination revealed that Plaintiff's memory was intact, her fund of information was somewhat below average, her abstractions were somewhat concrete, her judgment was not compromised, and her insight into current functional problems was fair.  (Tr. 19, 309).  Dr. Jordan diagnosed Plaintiff with borderline intellectual functioning and opined that she could carry out and remember instructions of a simple, one-step nature, but that she could not perform multi-step tasks without some degree of supervision.  (Tr. 20, 3010).  The ALJ found Dr. Jordan's opinion to be somewhat persuasive, finding persuasive his opinions as to Plaintiff's limitations regarding the performance of multi-step tasks.  (Tr. 20).  However, the ALJ found that the objective record supported a finding that Plaintiff had moderate limitations involving the ability to understand, remember, or apply information and the ability to concentrate, persist, or maintain pace.  (Tr. 20).

Additionally, the ALJ noted that Plaintiff received an occupational diploma and had a history of placement in EMR classes.  (Tr. 20, 305, 537, 554).  The ALJ also cited clinical notations, including with Dothan Family Health Center dated 2018 to 2019, Southeast Cardiology Clinic dated 2017 to 2018, and Southern Bone and Joint Specialists dated 2017 and 2019, that failed to disclose evidence of Plaintiff's cognitive or academic impairments.  (Tr. 17-20, 576-84, 721-39, 825-874, 906-14, 917-26).  The ALJ noted that mental status evaluations referenced in such notations routinely indicated that she was alert and fully oriented, with normal and intact recent and remote memory, good insight, good judgment, and coherent thought processes, and that particular notations disclosed that Plaintiff's fund of knowledge, including awareness of current events and past history, was appropriate for her age.  (Tr. 20, 581, 731, 842).  The ALJ further considered the wide range of activities of daily living described by Plaintiff in her Function Report,

including helping her children with homework, reading, handling finances, cooking, shopping, and driving. (Tr. 20, 286-89). Moreover, the ALJ noted that vocational rehabilitation specialists did not advise that Plaintiff was unable to perform work activity due to intellectual or academic limitations and that the record documented her past work activity at the semi-skilled level. (Tr. 20).

Plaintiff asserts that all the jobs the ALJ determined at step five of the sequential evaluation process that she could perform required her to be able to read at a rate of 95-120 words per minute, as they have a language development level of 1. (Doc. 16 at p. 10); (Tr. 22; s*ee* DICOT 525.687-010, 1991 WL 674440 (poultry dresser); DICOT 529.687-186, 1991 WL 674781 (produce sorter); DICOT 230.687-010, 1991 WL 672162 (advertising material distributor)). Plaintiff argues that assuming the ALJ found Dr. Cline's opinion persuasive, then such opinion would render her unable to perform such jobs. (*Id.*). However, Plaintiff's argument is based upon mere conjecture: Dr. Cline did not specifically opine that Plaintiff was incapable of language development level 1 jobs; Dr. Cline did not assess Plaintiff as to how many words she could read per minute; and Dr. Cline did not opine as to the severity of Plaintiff's reading disorder, the type of difficulty with reading that was involved, how much reading Plaintiff would be able to do, or the complexity or length of the instructions or directions to which Plaintiff would have difficulty. Nor did Dr. Cline state that Plaintiff was limited in reading at a certain pace, particularly if the instructions were simple or could be remembered or explained verbally. Moreover, "[c]ourts have consistently found that reading at an LD level of 1 generally corresponds to reading at between the first- and third-grade level." *McGee v. Kijakazi*, No. CV 22-79, 2023 WL 2602070 at *1 (W.D. Pa. Mar. 22, 2023) (citing *Rholetter v. Colvin*, 639 F. App'x 935, 937-38 (4th Cir. 2016) (citing *Hernandez v. Colvin*, No. 13 CV 1955, 2014 WL 4784076, at *4 (N.D. Ill. Sept. 25, 2014)); *Bibb*

*v. Comm'r of Soc. Sec.*, No. 19-13428, 2020 WL 8464418 at *6 (E.D. Mich. Nov. 30, 2020), *report and recommendation adopted*, *Bibb v. Saul*, No. 2:19-CV-13428, 2021 WL 287731 (E.D. Mich. Jan. 28, 2021); *Strong v. Comm'r of Soc. Sec.*, No. 2:12-CV-1229, 2013 WL 5671267 at *7 (W.D. Pa. Oct. 16, 2013)); *David W. v. Comm'r of Soc. Sec.*, No. 417CV04336, 2019 WL 1197691 at *9 (C.D. Ill. Jan. 3, 2019*), report and recommendation adopted sub nom. David W. v. Berryhill*, No. 417CV04336, 2019 WL 1173335 (C.D. Ill. Mar. 13, 2019).

Plaintiff fails to point to any specific part of Dr. Cline's opinion that should have been included into Plaintiff's RFC that would have altered the outcome.  Because the record shows that Plaintiff's RFC was consistent with what Dr. Cline specifically opined and with the record as a whole, the ALJ's failure to address the persuasiveness of Dr. Cline's opinion did not affect the ultimate findings and was harmless error.

### C.     Plaintiff's Ganglion Cyst

Plaintiff asserts that there is no indication, express or implied, that the ALJ included an evaluation of her documented ganglion cyst.  (Doc. 16 at p. 11).  Plaintiff argues that this failure is a clear violation of the ALJ's duty and constitutes legal error—as the ALJ's decision is devoid of any finding as to the severity of the ganglion cyst, whether it meets or equals a listing, or its impact on her RFC regarding limitations to perform work related functions.  (*Id.*).  The Commissioner contends that the medical records do not include objective medical findings or other evidence that showed Plaintiff's ganglion cyst would have affected her ability to perform basic work activities for any consecutive twelve-month period beyond the limitations included in the ALJ's RFC finding.  (Doc. 18 at p. 12).

Plaintiff bears the burden to prove that an impairment is severe.  *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  "[A] diagnosis or a mere showing of 'a deviation from

purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). The "mere existence" of an impairment does not reveal its effect on a claimant's ability to work or undermine RFC findings. *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005); *see also Crans v. Berryhill*, No. 3:16-CV-914, 2017 WL 4683933 at *5 (M.D. Ala. Oct. 18, 2017) ("[T]he mere diagnosis of [a condition] says nothing about the severity of the condition.") (quoting *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)).

Here, Plaintiff cites only one medical record from December 11, 2019 where she complained of pain in her left wrist. (Doc. 16 at 11; Tr. 909-11). Plaintiff was diagnosed with a ganglion cyst of the left wrist and was treated with medication and a wrist splint. (Tr. 909, 911). Plaintiff cites no other instances in the record where she complained of or was treated for wrist pain. Plaintiff neither alleges that the ganglion cyst affected her ability to work nor identifies what limitations or restrictions were needed to be included into her RFC to account for the alleged impairment. *See Katz v. Comm'r of Soc. Sec.*, No. 6:18-CV-1131, 2019 WL 5063520 at *3 (M.D. Fla. Oct. 9, 2019) (noting that while it was true that the ALJ did not mention plaintiff's borderline personality disorder diagnosis in her decision, the court found that the ALJ did not commit any error as the plaintiff, who was represented by counsel, failed to allege, either in her application or at the administrative hearing, that she was disabled by BPD and she failed to show how her BPD resulted in any disability limitations, let alone that any such limitations were beyond those in the RFC). The court concludes that the ALJ comprehensively assessed Plaintiff's limitations and included only the limitations into her RFC that were found supported by the record.

### D.       Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ improperly relied on her lack of treatment as a basis for discrediting her testimony.  (Doc. 16 at pp. 11-12).  The Commissioner contends that substantial evidence supported the ALJ's determination that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her alleged symptoms were not entirely consistent with the medical evidence and other evidence in the record—as the medical records and other evidence discussed by the ALJ supported the ALJ's evaluation of Plaintiff's subjective statements and the ALJ's assessment of Plaintiff's RFC.  (Doc. 18 at p. 14).

In determining whether a claimant is disabled, the claimant's symptoms, including pain, are considered to the extent that they are reasonably consistent with objective medical evidence and other evidence.  20 C.F.R. §§ 404.1529(a), 416.929(a).  The Commissioner will consider a claimant's statements about his or her symptoms and any description that claimant's medical sources or nonmedical sources may provide about how the symptoms affect the claimant's activities of daily living and ability to work.  *Id*.  However, a claimant's statements about pain or symptoms alone are not enough to establish the existence of a physical or mental impairment or disability.  *Id*.; SSR 16-3p, 2017 WL 5180304 at *2 (S.S.A. Oct. 25, 2017); *Turner v. Kijakazi*, No. 1:19-CV-774, 2021 WL 3276596 at *9 (M.D. Ala. July 30, 2021) ("[A]n ALJ is not required to accept a claimant's subjective allegations of pain or symptoms.").  The regulations set out a two-step process for the evaluation of subjective complaints.  *Id*.; SSR 16-3p, 2017 WL 5180304 at *3.  To establish a disability based on testimony of symptoms, the claimant must provide evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms, or (2) evidence establishing that the objectively determined medical condition could be reasonably expected to give rise to the alleged symptoms.

*Carroll v. Soc. Sec. Admin., Comm'r*, No. 6:21-CV-00014, 2022 WL 3718503 at *12 (N.D. Ala. Aug. 29, 2022) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)); 20 C.F.R. §§ 404.1529(a)-(b), 416.929(a)-(b); SSR 16-3p, 2017 WL 5180304 at *3.

"Consideration of a claimant's symptoms therefore involves a two-step process, wherein the SSA first considers whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the claimant's symptoms, such as pain." *Mixon v. Kijakazi*, No. 8:20-CV-2991, 2022 WL 2816964 at *3 (M.D. Fla. July 19, 2022); 20 C.F.R. §§ 404.1529(a)-(b), 416.929(a)-(b); SSR 16-3p, 2017 WL 5180304 at *2-3.   Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's symptoms is established, the ALJ must then consider all of the evidence in the record to evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's capacity for work.   SSR 16-3p, 2017 WL 5180304 at *3-4; 20 C.F.R. §§ 404.1529(a)-(c), 416.929(a)-(c); *Stromgren v. Kijakazi*, No. 3:21-CV-908, 2022 WL 1205347, at *5 (N.D. Fla. Mar. 11, 2022), *report and recommendation adopted*, No. 3:21-CV-908, 2022 WL 1204519 (N.D. Fla. Apr. 22, 2022).   In doing so, SSR 16-3p and the regulations require an ALJ to consider certain factors, including: (1) daily activities; (2) location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken; (5) treatment, other than medication, to relieve pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) any other factors concerning functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2017 WL 5180304 at *8-9; 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ will also consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between claimant's statements and the rest of the evidence, including the history, signs and laboratory findings, and statements by treating and non-treating sources or other persons about how the symptoms affect the claimant.   20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).   "However, Eleventh Circuit case law does not require an ALJ to enumerate every factor in every decision."   *Alexander v. Comm'r of Soc. Sec. Admin.*, No. 6:20-CV-01862, 2022 WL 4291335 at *5 (N.D. Ala. Sept. 16, 2022) (citing *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (concluding that the ALJ need not cite to "particular phrases or formulations," but must provide reasons that would enable a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole).

"Subjective complaint credibility is the province of the ALJ."   *Williams v. Kijakazi*, No. 2:20-CV-277, 2022 WL 736260 at *2 (M.D. Ala. Mar. 10, 2022) (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014)).  If the ALJ discredits a claimant's subjective statements, however, the ALJ "must articulate explicit and adequate reasons for doing so."  *Foote*, 67 F.3d at 1561-62; *Patterson v. Kijakazi*, No. 8:21-CV-359, 2022 WL 3028058 at *3 (M.D. Fla. Aug. 1, 2022).  That is, "[w]here proof of a disability is based upon subjective evidence and a credibility determination is a critical factor in the decision, if the ALJ discredits the claimant's testimony as to his subjective symptoms, the ALJ must either explicitly discredit such testimony or the implication from the ALJ's opinion must be so clear as to amount to a specific credibility finding."  *Martinez v. Comm'r of Soc. Sec.*, No. 21-12116, 2022 WL 1531582 at *2 (11th Cir. May 16, 2022) (citing *Foote*, 67 F.3d at 1562).

Plaintiff argues that the ALJ impermissibly drew a negative inference from her purported lack of treatment to discredit her testimony without first developing the record or addressing her financial ability to pursue more rigorous treatment:

> Throughout the decision, the ALJ repeatedly relies on Ms. Reeves' "paucity of medical evidence in this case" as justification for discrediting her testimony as to the severity and limiting effects of her impairments. (R. 21). As an initial matter, the ALJ's characterization of Ms. Reeves' medical evidence as a "paucity" or otherwise "sporadic and intermittent" is at odds with the sheer volume of treatment records presented to the ALJ as the record contains more than six hundred pages of medical evidence with treatment received at regular intervals during the relevant time period.

(Doc. 16 at p. 13).  As support, Plaintiff references a sentence after the ALJ's lengthy discussion of the medical evidence where the ALJ states, "As previously noted, the undersigned recognizes the paucity of medical evidence in this case for complaints surrounding her alleged impairments and finds it reasonable to assume that if the claimant were experiencing difficulties to a disabling degree, she would have presented to her physicians for persistent, regular, and ongoing treatment." (Tr. 21).

Plaintiff grossly overstates the import of this statement and the ALJ's alleged reliance on Plaintiff's lack of treatment in discrediting her testimony.  In reading the ALJ's decision as a whole, the "paucity" of medical evidence appears to refer to the lack of the <u>quality</u> of evidence presented by Plaintiff to support subjective complaints at the time that she made them, not the total <u>quantity</u> of medical records that were made part of the record and considered by the ALJ.  That is, "paucity" refers to what was not in the more than six hundred pages of medical evidence.  The ALJ's decision reflects that the ALJ thoroughly considered the entire evidence in accordance with 20 C.F.R. §§ 404.1529, 416.92920 and SSR 16-3p in considering Plaintiff's symptoms.

In determining the consistency of Plaintiff's subjective statements with the record evidence, the ALJ stated the following:

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c. As for medical opinion(s) and prior administrative medical finding(s), the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources.

(Tr. 15-16).

The ALJ then proceeded to discuss extensively the medical record. The ALJ summarized

the medical record as follows:

The claimant presented to the emergency room with complaints of back pain in March 2013, with examination showing moderate back pain and painful range of motion with all movement. However, the claimant's strength was 5/5 in all extremities; she had no obvious gross deficits in sensation; and her gait was steady. She was diagnosed with acute back pain and was prescribed Flexeril, Ultram, and Prednisone (Exhibits 3F and 15F). The treatment record, including notations with Southern Bone and Joint Specialists, generally disclosed the claimant's complaints of lower back pain and left leg symptomatology in October 2017 and November 2017, as well as subsequently in February 2019, June 2019, and July 2019, with notations referencing diagnoses of lower back pain, degeneration of lumbar intervertebral disc, lumbosacral radiculopathy, acute sciatica on the left, and bilateral lower extremity radiculopathy (Exhibits 7F, 14F, 17F, and 22F).

Notations of record **routinely** disclosed the claimant's normal lumbar spine alignment, with there being findings of tenderness of the lumbar spine at particular visits and **no tenderness noted** at certain visits, as well. Similarly, the treatment record disclosed the claimant's blend of normal and abnormal findings regarding lumbar spine range of motion, with some reference being made to her pain with range of motion during examination. At certain visits, the claimant was observed to have negative straight leg raise testing, while, at other visits, she was found to have positive seated straight leg raise testing and a positive straight leg raise test on the left. The record made **rare reference** to the claimant's gait abnormality, with notations **primarily** disclosing her normal gait, with the ability to heel and toe walk without difficulty. Notations **routinely** referenced the claimant's normal and/or

good strength, and, while it was stated in particular documentation that she appeared to be weak in her left lower extremity, it was attributed to back pain and not muscle weakness. The claimant was found to have a negative Patrick-Fabere test, as well as **generally normal** findings regarding reflexes (with a **rare** finding of an absent plantar reflex). Further, documentation of record primarily disclosed the claimant's normal and/or good sensation, with the exception of diminished sensation in the left foot. The claimant, however, was routinely found to be grossly neurovascularly intact in the bilateral lower extremities, with there also being no documented evidence of muscle atrophy. The claimant's lumbar spine x-rays of record showed mild degenerative changes/decreased disc space at the LS-S1 level, with a spur at the L4 level, and her MRI of the lumbar spine was considered negative, with imaging reflecting well-maintained disc spaces and normal levels at L1-2, L2-3, L3-4, L4-5, and L5-S1. According to treatment notations, the claimant's lumbar spine MRI was interpreted to be benign overall, without findings of significant or moderate stenosis or herniation (Exhibits 7F, 14F, 17F, 21F, and 22F).

In evaluating the claimant's musculoskeletal complaints, the undersigned has fully considered notations with Southern Bone and Joint Specialists, as well as documentation with Family Practice Center of Abbeville referencing her intermittent complaints of back pain and the limited chiropractic records of Scot A. Thompson (Exhibits 12F and 23F). The undersigned notes that physical therapy was recommended for the claimant's lower back in 2017, with subsequent documentation from February 2019 referencing her reports that **physical therapy had helped her tremendously and that she was basically pain free**, but that she **did not continue doing her exercises after therapy finished**. That same month, the claimant was again recommended referral for physical therapy, and she underwent extensive therapy from February 2019 through May 2019 for lower back pain and lumbosacral radiculopathy. While certain notations from April 2019 indicated that the claimant was much improved and that she had good response to therapy, notations from May 2019 revealed that she had made slow progress toward goals. According to the record, the claimant returned for physical therapy in July 2019, with notations referencing her discharge in May due to lack of progress. Notations again indicated, however, that she had previously gone through therapy with **good results, but failed to continue with her home exercise program** (Exhibits 7F and 22F).

The undersigned acknowledges the claimant's documented treatment for her musculoskeletal complaints over the period for consideration, as well as the **blend of normal and abnormal examination findings**, but notes the sporadic and intermittent nature of her treatment throughout the period for consideration. Moreover, **a review of the record fails to suggest that the claimant has experienced ongoing, substantial musculoskeletal symptoms or abnormal findings** that would be consistent with an individual experiencing disabling functional limitations. Further, the undersigned finds that **diagnostic imaging of record was not indicative of impairments that would produce disabling**

27

**functional limitations**. The undersigned additionally emphasizes that, while certain notations documented the claimant's reports that physical therapy was not successful, other notations suggested that she had previously received benefits/good results from her formal physical therapy program. The treatment record documented the claimant's placement on Gabapentin, Meloxicam, Zanaflex, Diclofenac Sodium, Robaxin, Relafen, Tramadol, Medrol Dosepak, and Amitriptyline, as well as Depo Medrol injections, Toradol injections, and an epidural steroid injection (Exhibits 7F, 12F, 14F, 17F, 19F, and 22F). **There is no indication from the record that the claimant's musculoskeletal symptoms have been resistant to treatment with a range of medications and other conservative therapies**. Also, there is **no evidence of the claimant's recurrent presentations to the emergency room for exacerbations of pain or other related symptoms, and the undersigned emphasizes that surgical intervention has not been recommended. According to the current record, the claimant has not been observed to have ongoing neurologic deficits** in the upper or lower extremities, such as reflex and sensory abnormalities, motor incoordination, **or significant decrease in muscle strength.** Further, **no muscle atrophy, persistent limitation of range of motion, or significant spasm has been documented in the record.**

Documentation of record disclosed the claimant's diagnosis of essential hypertension, with notations revealing her intermittent presentation to the emergency room for high blood pressure on various occasions generally between June 2011 and December 2019. Documentation from the claimant's June 2011 visit referenced her previous **non-compliance with medications**. According to her emergency room visits in February 2017, March 2017, August 2017, February 2018, and December 2019, the claimant's blood pressure was considered stable and/or improved after treatment, although some of those notations described the condition as poorly controlled or indicated that she had required some medication alterations. According to particular emergency room notations, the **claimant admitted to eating salty food, stating that she had no intention of changing that habit** (Exhibits 3F, 15F, and 20F). Notations, including emergency room documentation and treatment notations with Abbeville Family Health Center, Southeast Cardiology Clinic, Dothan Family Health Center, and Family Practice Center of Abbeville, P.A., disclosed the claimant's placement on Lisinopril-Hydrochlorothiazide, Amlodipine, Losartan, Clonidine, Irbesartan-Hydrochlorothiazide, and Bisoprolol Fumarate over the period for consideration for treatment of her high blood pressure (Exhibits 3F, 4F, 6F, 12F, 16F, 19F, and 20F).

The undersigned acknowledges the claimant's notations with Dothan Family Health Center from November 2019 disclosing her report that she had no idea what she was supposed to be taking for her blood pressure. According to notations from December 2019, the claimant's renal artery ultrasound was negative for renal artery stenosis (Exhibit 21F). **Cardiovascular examinations and diagnostic imaging of record displayed generally normal findings.** The undersigned also notes that **certain documentation of record indicated that medication adjustments and/or alterations were made in an effort to obtain optimum control.** The undersigned

finds **no indication from the record that the claimant's hypertension has been resistant to control and/or stability with the proper and regular use of the appropriate medications** (Exhibits 3F, 15F, 16F, 18F, 19F, 20F, and 21F). The record contains no indication of end-organ damage, such as retinopathy, kidney involvement, or heart disease, and the undersigned finds that there has been no evidence of substantial functional limitations resulting from her diagnosed essential hypertension.

(Tr. 16-19) (emphasis added).   The ALJ also discussed medical evidence related to impairments

deemed non-severe:

The claimant was hospitalized in September 2013, with a discharge diagnosis of syncope, with notations also referencing her uncontrolled hypertension. Although her initial EKG was abnormal, a repeat EKG revealed normal QT interval. The claimant's chest x-ray was normal, as was her CT scan of the head (Exhibits 3F and 15F). Regarding potential cardiac symptomatology, the undersigned notes that the claimant underwent an echocardiogram in November 2017 that revealed normal left ventricular systolic function; ejection fraction of 65%; trace mitral, tricuspid, and pulmonic regurgitation; and normal mitral doppler inflow pattern. Diagnostic imaging of the claimant's chest in November 2017 was negative. Notations from December 2018 disclosed the claimant's abnormal electrocardiogram due to murmur (Exhibits 15F and 16F). In notations from November 2017, the claimant was noted to have dyspnea on exertion, but her pulmonary function study was considered normal. At a subsequent visit in December 2018, notations further referenced the claimant's shortness of breath, but also disclosed her normal spirometry, normal lung volumes, and normal diffusing capacity (Exhibits 15F and 16F). At the claimant's emergency room visit in December 2019, she presented with complaints of chest pain, but denied shortness of breath and palpitations. Her chest x-ray was normal (Exhibit 20F). The treatment record additionally disclosed the claimant's diagnosis of mixed hyperlipidemia with placement on Atorvastatin and no documented resulting functional limitation (Exhibits 17F, 18F, 19F, and 20F). Finally, the record referenced the claimant's remote assessment of anemia in 2007, with the current record failing to document her ongoing difficulty with the condition (Exhibit 9F).

(Tr. 13).

As discussed previously, the ALJ considered opinion evidence from Dr. Hinton, Dr. Cline, and Dr. Jordan.  (Tr. 16, 19).  In addition, the ALJ considered the opinion of State agency expert Howard C. Harper, Jr., M.D., who concluded that there was insufficient evidence through the date last insured (June 30, 2015) regarding Plaintiff's physical impairments.  (Tr. 16, 111, 115-16).  As

to Plaintiff's application for SSI benefits, Dr. Harper opined that Plaintiff's physical impairments were not severe.  (Tr. 16, 123).  The ALJ found Dr. Harper's opinion to be unpersuasive, as the ALJ determined that the evidence presented at the hearing level was sufficient to reach a conclusion that Plaintiff possessed severe physical impairments.  (Tr. 16).  Further, as stated previously, the ALJ considered the wide range of activities of daily living described by Plaintiff in her Function Report, including helping her children with homework, reading, handling finances, cooking, shopping, and driving.  (Tr. 20, 286-89).

The Eleventh Circuit has stated that when an ALJ "'primarily if not exclusively' relies on a claimant's failure to seek treatment, but does not consider any good cause explanation for this failure, this court will remand for further consideration.  However, if the ALJ's determination is also based on other factors, such as RFC, age, educational background, work experience, or ability to work despite the alleged disability, then no reversible error exists."  *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1268 (11th Cir. 2015) (citations omitted); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir.2003).  Moreover, SSR 16-3p states, in part, as follows:

> [I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints. When we consider the individual's treatment history, we may consider (but are not limited to) one or more of the following:
> …
> An individual may not be able to afford treatment and may not have access to free or low-cost medical services.
> …

> … [W]e will consider and address reasons for not pursuing treatment that are
> pertinent to an individual's case. We will review the case record to determine
> whether there are explanations for inconsistencies in the individual's statements
> about symptoms and their effects, and whether the evidence of record supports any
> of the individual's statements at the time he or she made them. We will explain how
> we considered the individual's reasons in our evaluation of the individual's
> symptoms.

SSR 16-3p, 2017 WL 5180304 at *9-10.

The ALJ thoroughly discussed the entire record in addressing Plaintiff's subjective statements and determined that the evidence in the record submitted by Plaintiff did not support a finding of disability.  A plaintiff "bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison*, 355 F.3d at 1276.  Plaintiff, however, produced a "paucity" of evidence to show that statements about her symptoms and intensity were consistent with the medical record as a whole.  Even if the lack of treatment was a factor in the ALJ's assessment of Plaintiff's subjective complaints, there is no indication it was a controlling or even significant factor in the ALJ's decision.

Plaintiff cites that some doctors to whom she would have been referred did not accept Medicaid,[6] that some treatment records from Southeast Alabama Rural Health Associates regarding her back and leg pain were "lost" due to a technical malfunction, that she was prescribed a blood pressure cuff but because "Medicaid wouldn't pay for it" she had to borrow the funds from a family member, and that she testified that Medicaid did not "last that long" and that her orthopedist gave her "three options to go to Health Action, or take an MRI." (Doc. 16 at p. 13; Tr. 74, 76, 95-96).  Plaintiff further argues that the ALJ failed to address her financial ability to pursue "a range of medications and other conservative therapies." (*Id*. at p. 14).  Yet Plaintiff does not specifically argue or cite any evidence that financial difficulties caused any gaps in the

---

[6] Plaintiff did not testify to this fact; her representative provided this information.  (Tr. 71).

medical record or prevented her from receiving medical care elsewhere or from presenting to the

emergency room.  In fact, Plaintiff made several visits to the emergency room from 2017 to 2019.

(Tr. 18).  Nor does Plaintiff cite what specific treatment she needed but was denied.  Plaintiff does

not assert or present evidence that she was denied physical therapy because of financial difficulties.

Imstead, the records indicated and Plaintiff testified that she had improvement with physical

therapy.  (Tr. 17-18, 73).  Plaintiff does not allege that she lacked financial ability to pay for her

medications or cite to any evidence in the record that established that she was prevented from

receiving prescribed medication because of her financial inability to do so.  In fact, the record

indicated that Plaintiff was consistently prescribed medication and that she received such

medication with varying degrees of success.  (Tr. 18-19, 21).

Plaintiff next argues that the ALJ engaged in impermissible speculation by finding that she

"would have presented to her physicians for persistent, regular, and ongoing treatment" if she had

truly experienced difficulties to a disabling degree and also argues that this phrase was vague and

ambiguous.  (Doc. 16 at p. 14).  However, the ALJ provided several reasons for discounting

Plaintiff's subjective statements:

> There is no indication that her impairments would be resistant to either alleviation
> or control with the proper and regular use of the appropriate prescription
> medications, if taken as prescribed. Further, there is no indication from the record
> that the claimant was attempted on an array of prescription medications to no avail
> and that all possible medication choices were exhausted without success. The
> record additionally contains no evidence of the claimant's ongoing difficulties with
> side effects of medication, and there is no indication from the record that the
> claimant was unsuccessfully tried on alternative medications in an attempt to find
> medications that did not produce adverse effects.
>
> Based on a review of the medical evidence of record, as well as the claimant's
> testimony at the hearings, the undersigned finds that the preponderance of the
> evidence contained in the record does not support the claimant's allegations of
> totally incapacitating pain and other symptomatology and that the claimant's
> statements regarding the severity, frequency, and duration of her symptoms are
> overstated. The record fails to document persistent, reliable manifestations of a

disabling loss of functional capacity by the claimant resulting from her reported symptomatology, and all of the above factors lead the undersigned to a conclusion that the claimant's alleged symptoms and conditions are not of a disabling degree. After considering the entirety of the record, the undersigned concludes that the claimant would not be precluded from performing the requirements of work activity on a regular and sustained basis as set forth in the residual functional capacity statement herein.

(Tr. 21).

Thus, the ALJ explained that the record indicated Plaintiff's medications achieved positive results in treating her symptoms. The ALJ also found that there was no objective evidence showing Plaintiff could not perform work activity within her RFC. Further, the ALJ considered the entire record, which included the ALJ's thorough discussion of the objective medical evidence, opinion testimony, and Plaintiff's activities of daily living. Because those reasons are not based on Plaintiff's inability to afford treatment, the court concludes that the ALJ did not rely "primarily if not exclusively" on Plaintiff's lack of treatment to discount her subjective statements. *See Coleman v. Kijakazi*, No. 1:21-CV-00484, 2023 WL 2059628 at *7 (M.D. Ala. Feb. 16, 2023). To the extent the ALJ erred by drawing a negative inference regarding Plaintiff's lack of treatment, such error is harmless and not reversible—as the ALJ sufficiently considered the factors under SSR 16-3p, 2017 WL 5180304 at *8-9, and 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Plaintiff next argues that the ALJ's finding that "there is no indication that her impairments would be resistant to either alleviation or control with the proper and regular use of the appropriate prescription medications, if taken as prescribed," is vague and ambiguous and speculates that she was not taking her medication despite Plaintiff's testimony that she was compliant with taking her prescribed medications. (Doc. 16 at p. 14; Tr. 21, 47, 91). There is nothing speculative or vague about this statement, as it specifically referred to the records discussed by the ALJ that showed Plaintiff's medications helped and caused no side effects. (Tr. 18-19: "The undersigned also notes

that certain documentation of record indicated that medication adjustments and/or alterations were made in an effort to obtain optimum control. The undersigned finds no indication from the record that the claimant's hypertension has been resistant to control and/or stability with the proper and regular use of the appropriate medications (Exhibits 3F, 15F, 16F, 18F, 19F, 20F, and 21F)."; Tr. 18: "There is no indication from the record that the claimant's musculoskeletal symptoms have been resistant to treatment with a range of medications and other conservative therapies."; Tr. 18: "Documentation from the claimant's June 2011 visit referenced her previous non-compliance with medications."; Tr. 18: "Documentation from the claimant's June 2011 visit referenced her previous non-compliance with medications. ... According to particular emergency room notations, the claimant admitted to eating salty food, stating that she had no intention of changing that habit (Exhibits 3F, 15F, and 20F)."). Further, the statement is followed by an explanation in which the ALJ stated:

> [T]here is no indication from the record that the claimant was attempted on an array of prescription medications to no avail and that all possible medication choices were exhausted without success. The record additionally contains no evidence of the claimant's ongoing difficulties with side effects of medication, and there is no indication from the record that the claimant was unsuccessfully tried on alternative medications in an attempt to find medications that did not produce adverse effects.

(Tr. 21).

Plaintiff further argues that the ALJ improperly highlighted that "surgical intervention has not been recommended" as grounds for finding her impairments not disabling. (Doc. 16 at p. 15; Tr. 18). However, "[m]inimal or no treatment for an alleged disabling condition may be validly considered by an ALJ in discrediting a claimant's subjective complaints." *Beard v. Saul*, No. CV 120-019, 2021 WL 1555042 at *6 (S.D. Ga. Mar. 30, 2021), *report and recommendation adopted*, No. CV 120-019, 2021 WL 1554074 (S.D. Ga. Apr. 20, 2021); SSR 16-3p, 2017 WL 5180304 at *8-9; 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Wolfe v. Chater*, 86 F.3d 1072, 1078

(11th Cir. 1996) (recognizing that a physician's conservative medical treatment for a particular condition may negate a claim of disability); *Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 863-64 (11th Cir. 2017) (finding that a conservative treatment regimen for a plaintiff's mental and physical impairments supported the ALJ's finding that the plaintiff's subjective complaints were inconsistent with the medical evidence: "The ALJ's credibility determination is supported by substantial evidence ...: Horowitz received conservative treatment for her impairments. ALJs are permitted to consider the type of a treatment a claimant received in assessing the credibility of her subjective complaints."); *Pennington v. Comm'r of Soc. Sec.*, 652 F. App'x 862, 869-70 (11th Cir. 2016). "The meaning of 'conservative treatment' is well known; it includes any mode of treatment which is short of surgery. Treatment with medication, whether prescribed or over-the-counter, and steroid injections is still conservative treatment, i.e. not surgery." *Doig v. Colvin*, No. 8:13-CV-1209, 2014 WL 4463244 at *4 (M.D. Fla. Sept. 10, 2014); *Brown v. Comm'r of Soc. Sec.*, 680 F. App'x 822, 826 (11th Cir. 2017) ("[W]ith the exception of surgery for her carpal tunnel syndrome, her doctors primarily recommended conservative treatments—like prescription medications, physical therapy, and diet and exercise."). "A course of conservative treatment tends to negate a claim of disabling pain." *Cowart v. Comm'r of Soc. Sec.*, No. 8:18-CV-1039, 2019 WL 13245175 at *5 (M.D. Fla. Sept. 9, 2019) (citation omitted); *see Cardwell v. Soc. Sec. Admin., Comm'r*, No. 4:20-CV-00758, 2022 WL 828934 at *5 n.3 (N.D. Ala. Mar. 18, 2022) (noting that the conservative nature of the treatment undercut claimant's allegations of disabling pain); *Olivares v. Berryhill*, No. 4:17-CV-0043, 2018 WL 1319057 at *5 (N.D. Ala. Mar. 14, 2018) (where doctor did not recommend surgery, but implemented a more conservative treatment of epidurals, the court found that "[t]he rendering of such conservative treatments may be considered by an ALJ in resolving credibility issues against a claimant claiming disabling pain."); *Paulino v.*

*Kijakazi*, No. 5:21-CV-121, 2022 WL 16920122 at *6-7 (M.D. Fla. Nov. 14, 2022) (noting that the ALJ properly considered that plaintiff received conservative treatment that did not involve surgery in evaluating plaintiff's subjective complaints) (collecting cases); *Smith v. Soc. Sec. Admin., Comm'r*, No. 1:19-CV-01943, 2020 WL 6827899 at *3 (N.D. Ala. Nov. 20, 2020) ("Although Ms. Smith was referred to a neurosurgeon for her back, there is no performance or even recommendation of surgery present in Ms. Smith's medical records. No medical record from a neurosurgeon was even presented.  Evidence of a conservative course of treatment, like the one here, discredits a claimant's testimony regarding the level of their pain."); *Sheres v. Berryhill*, No. 6:18-CV-1000, 2019 WL 2755031 at *12 (M.D. Fla. July 2, 2019) (finding that the ALJ properly considered that plaintiff did not receive treatment from an orthopedist and plaintiff's medical providers did not recommend surgery or epidural injections).  The court thus finds that the ALJ did not err in considering that surgical intervention was not recommended when assessing Plaintiff's subjective complaints.

Finally, Plaintiff argues that the ALJ improperly characterized her medical treatment as "sporadic and intermittent" and that the ALJ did not develop the record or investigate her purported lack of treatment for evidence of justified noncompliance.  (Doc. 16 at p. 15).  As previously discussed, the ALJ considered the entire record in assessing Plaintiff's subjective complaints.  The ALJ sufficiently considered the factors in accordance with 20 C.F.R. §§ 404.1529(c)(3)-(4), 416.929(c)(3)-(4) and SSR 16-3p.  The record consistently showed that the medical evidence did not support Plaintiff's subjective complaints at the time she made them.  The record further showed that Plaintiff responded well with conservative treatment.  Accordingly, the ALJ's assessment of Plaintiff's subjective statements was supported by substantial evidence.

## V.      Conclusion

After carefully and independently reviewing the record, and for the reasons stated above,

the court concludes as follows:

- that Plaintiff's motion for summary judgment (Doc. 16) is due to be **DENIED**;

- that the Commissioner's motion for summary judgment (Doc. 18) is due to be **GRANTED**; and

- that the Commissioner's decision is due to be **AFFIRMED**.

A separate judgment will issue.

**DONE** this the 26th day of September 2023.

_____

**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**